*Hartford,*
June, 1846.

Belden
*v.*
Lamb.

17   441
64   73

## BELDEN and another, administrators of *Belden, against* LAMB.

Evidence, to be admissible, need not afford full proof of the fact which it is offered to establish; but it is sufficient if it conduces, in any reasonable degree, to prove that fact.

Therefore, where the plaintiff, in an action against the defendant as indorser of a promissory note, for the purpose of showing that the defendant had received notice of non-payment in due time, offered testimony to prove, that he had admitted in conversation that he had received notice of non-payment, but he, at the same time, refused to pay the note, because the notice was misdirected; it was held, that this testimony was not to be withheld from the consideration of the jury, because it fell short of proving notice *in due time*; as the deficiency might be supplied by other evidence, direct or presumptive.

When certain facts conducing to prove diligence are either proved or conceded, the question whether they amount to due or legal diligence, is one for the decision of the court alone; but when the question is, what are the facts, and what was done by the holder in making enquiries, the jury are to decide it.

Where it was proved, that an indorsed note being left at one of the banks in the city of *Hartford* for collection, the holder and the cashier of that bank were ignorant of the indorser's place of residence; that the holder went out of the bank for the purpose of ascertaining it, and soon afterwards returned, and directed the cashier to write the word " *Chickopee*" upon the note, under the indorser's name, which he accordingly did; that when the note became due, notice of non-payment was sent by mail to the indorser, directed to him at *Chickopee*, which was not his place of residence, but about seven miles distant therefrom; that his place of residence was known to sundry citizens of *Hartford*; and that within a year previous to this time, six or seven notices of protest had been sent to him by mail, properly directed, from the other banks in *Hartford*; the court, after informing the jury what in point of law would be due diligence, under the circumstances of the case, submitted the evidence to them, and left it to them to decide, whether the holder had used such diligence, thus treating it as a mixed question of law and fact; it was held, that this course was correct.   [Two judges dissenting.]

If a promissory note be good at its inception, and effective in the hands of the payee against the maker, it may be sold by the holder, like any chattel or other chose in action, for such price or rate of discount as the parties may stipulate for, without the imputation of usury.

But if the note is made only to raise money upon, and is not to become effective until it is negotiated, the discounting of it at a greater rate than the lawful interest, is treated as a loan by the indorsee, and will be considered as *prima facie* usurious.

The distinction therefore is, with reference to the question of usury, between *business* and *accommodation* paper.

Though the purchaser of a promissory note may not be entitled to recover from the party from whom he received it a greater sum than the consideration paid; yet in an action against a third person, who indorsed the note as the surety of the maker, the rule of damages is the same as against the maker, *viz.* the face of the note and interest.

THIS was an action against the defendant, as the indorser of a promissory note, made by *William H. Lord* and *Joseph H. Potwine*, for 771 dollars, 96 cents, dated *October* 25th, 1838, and payable to the order of *C. & H. Chapin*, at the *Hartford Bank*, thirteen months after the date thereof, and indorsed successively by *C. & H. Chapin* and the defendant.

The cause was tried at *Hartford, September* term, 1845, before *Hinman* J.

The making of the note by *Lord & Potwine*, and the indorsement thereof in blank, first by *C. & H. Chapin*, and then by the defendant, were admitted. To prove presentment of the note for payment, and notice of non-payment to the defendant, the plaintiffs introduced *Francis Parsons* Esq., a notary public, as a witness, who testified, that on the 27th of *November* 1839, (the 28th being *Thanksgiving* day,) he presented the note at the *Hartford Bank* for payment, and it not being paid, he protested it for non-payment, and thereupon, on the same day, wrote and deposited in the post-office in the city of *Hartford*, a notice of non-payment, in the usual form, to *Alonzo Lamb*, the defendant, at *Chickopee, Mass.*

The plaintiff also introduced *Alonzo S. Beckwith*, as a witness, who testified, that ten or fifteen days,—he could not fix the time with certainty,—after the note fell due, he heard a conversation between *Thomas Belden* and *Lamb*, in which the latter stated to *Belden*, that he, the defendant, received a notice of non-payment of the note, some time after it became due, which notice was mis-directed; and for this reason, he refused to pay the note. This was all the evidence there was as to the defendant's receiving notice, or as to the time of receiving it.

To prove that *Belden* was ignorant of the defendant's place of residence, and had used due diligence to ascertain it, the plaintiff introduced *William T. Hooker*, cashier of the *Farmers and Mechanics Bank*, who testified, that on the 22nd of *November* 1839, *Belden* left the note at the bank for collection; that the enquiry was then made where *Lamb* resided; that neither of them then knew; that *Belden* then left the bank for the purpose of obtaining information as to *Lamb's* residence; that in a few minutes thereafter, he returned into the bank, where the witness, by *Belden's* direction, wrote the word " *Chickopee,*" in pencil-mark, upon the back of the note,

under *Lamb's* name, to denote his place of residence, which he then supposed to be *Chickopee;* and that afterwards, the note, by direction of the witness, was sent for collection to the *Hartford Bank,* where it was payable. The testimony of *Hooker* was the only evidence of diligence on the part of *Belden* to ascertain *Lamb's* place of residence. The defendant objected to the admission of this testimony ; but the court overruled the objection and admitted it.

It was proved by the defendant, and not denied by the plaintiffs, that *Lamb,* at the time the note was so protested, and for many years before and ever since, lived in the town of *South-Hadley,* in the state of *Massachusetts,* in which town were two post-offices, one situated at the distance of about three and a half miles from *Lamb's* place of residence, and the other at a village in that town, known by the name of *South-Hadley Canal,* about one half mile from *Lamb's* place of residence ; that the post-office at *Chickopee,* which is in the town of *Springfield,* was distant from *Lamb's* residence about seven miles ; that there were two intervening post-offices, between that at *Chickopee* and those in *South-Hadley ;* and that *Lamb* was accustomed to send to the post-office at *South-Hadley Canal,* and there receive letters and communications addressed to him by mail ; and to deposit such letters and communications as he wished to have transmitted by mail. There was no evidence that he was accustomed to receive or deposit his letters for transmission by mail, at any other post-office ; or that he had, upon any occasion, ever received any letter or communication at the post-office at *Chickopee,* or addressed to him at that place, except so far as this might be inferred, in respect to said notice of protest, from *Beckwith's* testimony. Nor was there any claim on the part of the plaintiffs, but that said notice of protest was mis-directed; nor was there any claim made by them, that the defendant ever received such notice, except what appeared from *Beckwith's* testimony.

The defendant introduced three or four witnesses, residents of the city of *Hartford,* who testified, that before and at the time the note was so protested and notice sent, they well knew *Lamb's* place of residence, but did not know at what office he received letters ; that he had been accustomed to visit the city of *Hartford* three or four times a year, and to

lodge at one of the public houses, when there; and that between the 1st of *January* 1839, and the 27th of *November* of that year, sundry notices of protests of notes, payable at the *Hartford, Connecticut River* and *Exchange* banks in the city of *Hartford*, had been directed and sent by mail to *Lamb*, at *South-Hadley Canal, viz.* three from the *Hartford Bank*, three from the *Connecticut River Bank* and one from *Francis Parsons* Esq., who was the attorney of the *Hartford Bank*, by whom the note in suit was protested. It was also proved on the trial, and not denied by the plaintiffs, that before and at the time the note in question was protested and notice sent, there was a daily mail from the city of *Hartford* to *South-Hadley Canal*; and that a letter deposited in the post-office in the city of *Hartford*, would, in the regular course of mail, arrive at the post-office at *South-Hadley Canal*, in the afternoon of the following day.

The defendant also, on the trial, introduced evidence to prove, that *C. & H. Chapin*, by whom said note was indorsed, held two other notes, made by *Lord & Potwine*, of even date with the note in question, all three of which notes were valid buiness notes, of about an equal amount; that *C. & H. Chapin* applied to *Belden* to discount these three notes; that *Belden* proposed to discount them, at the rate of two *per cent. per* month for the time they had respectively to run; it being understood, that they were to be indorsed over to *Belden*, by *C. & H. Chapin*, in case they should be so discounted; and that *Belden* would make some abatement from such discount, if the defendant would indorse the notes with *C. & H. Chapin*; that very shortly thereafter, *C. & H. Chapin*, and subsequently, the defendant, for their accommodation, indorsed the notes; that it was finally agreed between *Belden*, and *C. & H. Chapin*, that *Belden* should discount the notes at a rate of discount not less than one and a half *per cent. per* month, for the time the notes respectively had to run; and that *Belden*, in conformity with such agreement, actually discounted the notes, at such rate of discount; and that *Belden* and the defendant, had paid up in full the two notes other than the one in question, to *Belden*.

No evidence was introduced by the plaintiffs, nor was there any claim on their part, that there was any consideration for the transfer of the notes to *Belden*, or the discount retained

by him, than that which appeared from the evidence above stated. Nor was there any evidence that the defendant had ever received said notice of protest so sent by said *Parsons*, and directed to the defendant, at *Chickopee*, or of the time of receiving it, except from the foregoing testimony of *Beckwith*.

The defendant claimed to the court, that the jury could not, from the testimony of *Beckwith*, lawfully infer or find, that the notice of protest, so sent and misdirected, was received by the defendant in due time, or in such time as to fix his liability as indorser of the note ; and that the testimony of *Beckwith* ought not to go to the jury ; and he requested the court not to permit it to go to the jury. The defendant also claimed, that if there was any question as to the sufficiency of the notice of non-payment, it was, under the circumstances of the case, a question of law, for the court, and not for the jury, to decide ; and he requested the court to decide it. The defendant further claimed, that the jury could not, from the testimony of *Hooker*, lawfully infer or find, that *Belden* had used due diligence to ascertain the place of the defendant's residence ; and he requested the court not to suffer this testimony to go to the jury. The defendant also claimed, that whether *Belden* had used due diligence, under the circumstances of the case, was a question of law appertaining to the court, and not to the jury, to decide ; and that the court, for that reason, would not submit the evidence to the jury.

The plaintiffs claimed, that the testimony both of *Beckwith* and of *Hooker* ought to go to the jury, and requested the court to submit it to them accordingly.

The court decided, that the testimony of *Beckwith* was admissible, for the purpose of showing that the defendant had received notice, in due time, of the dishonour of the note ; but in charging the jury, the court told them, that such evidence was not sufficient by itself to authorize them to find, as a fact, that notice was received by the defendant in due time ; and that, as there was no other evidence upon that point, they ought not to find that notice was received by the defendant in due time. As to the testimony of *Hooker*, the court, after informing the jury what in point of law would be due diligence, under the circumstances of the case, submitted the testimony to them, and left it to them to decide, whether *Belden* had, or had not, used due diligence to ascertain the defendant's place of residence.

The defendant further claimed, that if the note was indorsed by *C. & H. Chapin,* and afterwards by the defendant, for their accommodation, and transferred upon or in pursuance of said contract, that contract, and the consideration upon which it was made, were usurious ; and that the defendant might avail himself thereof, in this suit, to defeat a recovery ; and he requested the court so to instruct the jury. The defendant further claimed, that if the court should be of opinion that the contract was not usurious, still the plaintiffs could not, in this suit, lawfully recover of the defendant any more than the balance of the consideration paid by *Belden,* for the notes remaining unpaid, and not the full amount of the note in suit ; and he requested the court so to charge the jury.

The plaintiffs claimed, that if the note was transferred in the manner above stated, it was not done upon an usurious consideration ; and that the plaintiffs were entitled to recover the full amount of the note in suit, including principal and interest ; and they requested the court so to instruct the jury.

The court charged the jury, that if the note was transferred to *Belden,* upon the contract and consideration, and in the manner and under the circumstances, above stated, the contract or consideration upon which the note was so transferred, was not thereby of course usurious ; and that, in case the jury should not find, that the transaction was intended as a mere cover for an usurious and corrupt loan of money by *Belden ;* and should find, that the defendant received notice of non-payment in due time to charge him as the indorser of the note ; or in case he did not so receive notice, that *Belden* used due diligence to ascertain the place of the defendant's residence ; the jury ought to find for the plaintiffs to recover the full amount of the note, without any deduction therefrom.

The jury returned a verdict for the plaintiffs, for the full amount of the note ; and the defendant moved for a new trial for a misdirection.

*Hungerford* and *Goodman,* in support of the motion, contended, 1. That the testimony of *Beckwith* ought not to have been admitted or submitted to the jury. In the first place, the jury could not from that evidence legally infer, that notice of the dishonour of the note was received in due time by the defendant. *Lawson* v. *Sherwood,* 1 *Stark. Ca.* 314.

Hartford,
June, 1846.

Belden
v.
Lamb.

*Braithwaite* v. *Coleman*, 4 *Nev. & Man.* 654. (30 *E. C. L.* 403.) But secondly, it was a question for the court, and not for the jury to decide. *Darbishire* v. *Parker*, 6 *East*, 3. *Scott* v. *Lifford*, 9 *East*, 347. *Sice* v. *Cunningham*, 1 *Cowen*, 397. *United States Bank* v. *Hatch*, 6 *Pet.* 250. *Holland* v. *Turner*, 10 *Conn. R.* 308. *Tindall* & al. v. *Brown*, 1 *Term R.* 167. 2 *Stark. Ev.* 255. *Patton* v. *Wilmot*, 1 *Har. & J.* 477. *Philips* v. *McCurdy*, 1 *Har. & J.* 187. *Bateman* v. *Joseph*, 12 *East*, 433. *Beckwith* & al. v. *Smith*, 22 *Maine R.* 125. *Van Hoesen* v. *Van Alstyne*, 3 *Wend.* 75. *Bank of Utica* v. *Phillips*, 3 *Wend.* 408. *Bryden* v. *Bryden*, 11 *Johns. R.* 187. *Reid* v. *Payne*, 16 *Johns. R.* 218. *Freeman* v. *Boynton*, 7 *Mass. R.* 483. *Granite Bank* v. *Ayres*, 16 *Pick.* 392. *Bank of North America* v. *Knight*, 1 *Yeates* 147. *Patterson Bank* v. *Butler*, 7 *Halst.* 268.

2. That the testimony of *Hooker* ought not to have been submitted to the jury; because they could not legally infer therefrom, that *Belden* had used due diligence to discover the defendant's place of residence. In support of this position, the following authorities, in addition to those above cited, were referred to. *The Mohawk Bank* v. *Broderick*, 13 *Wend.* 133. *Bank of Utica* v. *Bender*, 21 *Wend.* 643. *Remer* v. *Downer*, 23 *Wend.* 620. *Spencer* v. *Salina Bank*, 3 *Hill* 520. *Lowery* & al. v. *Scott*, 24 *Wend.* 358. *Ransom* v. *Mack*, 2 *Hill* 588. *Bank of Utica* v. *Davidson*, 5 *Wend.* 587. *Cuyler* v. *Nellis*, 4 *Wend.* 398. *Bank of Geneva* v. *Howlett*, 4 *Wend.* 328. *Catskill Bank* v. *Stall*, 15 *Wend.* 365. *Bank of Utica* v. *De Mott*, 13 *Johns. R.* 482. *Rhett* v. *Poe*, 2 *Howard* 457. *United States Bank* v. *Parker*, 12 *Wheat.* 559. *Thomas* v. *Rice*, 15 *Maine R.* 263. *Warren* v. *Cushman*, *Id.* 70. *Eastern Bank* v. *Brown*, 17 *Maine R.* 356. *Marsh* v. *Goddard*, 20 *Maine R.* 29. *Johnson* v. *Lewis*, 1 *Dana* 182. *Philips* v. *Chase*, 6 *Metc.* 492. *Fisher* v. *Evans*, 5 *Binn.* 541. *Haddock* v. *Murray*, 1 *N. Hamp. R.* 140. *Hill* v. *Verrall*, 3 *Greenl.* 333. *Barnwell* v. *Mitchell*, 3 *Conn. R.* 101. *Hartford Bank* v. *Stedman*, *Id.* 439. *Huntington* v. *Harvey*, 4 *Conn. R.* 124. *Welton* v. *Scott*, *Id.* 527. *Prentiss* v. *Donaldson*, 5 *Conn. R.* 175.

3. That the consideration upon which this note was transferred to *Belden*, was, according to the testimony adduced

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

Belden
*v.*
Lamb.

on the trial, (the truth of which was not controverted,) usurious; and the judge ought so to have charged the jury. *Ord on Usury,* 25. *Massa* v. *Dauling,* 2 *Stra.* 1243. *Richards* v. *Brown, Cowp.* 770. *Lowe* v. *Waller, Doug.* 736. *Pratt* v. *Willey,* 1 *Esp. R.* 40. *Rich* v. *Topping, Id.* 176. *Daniel* v. *Cartony, Id.* 274. *Parr* v. *Eliason,* 3 *Esp. R.* 210. *S. C.* 1 *East* 92. *Harrison* v. *Hannel,* 5 *Taun.* 780. *Lowes* v. *Mazzarredo,* 1 *Stark. Ca.* 385. 388. *The King* v. *Ridge,* 4 *Price* 50. *Chapman* v. *Black,* 2 *B. & Ald.* 589. *White* v. *Wright,* 3 *B. & Cres.* 273. (10 *E. C. L.* 75.) *Wyatt* v. *Campbell,* 1 *Moo. & Mal.* 80. (22 *E. C. L.* 257.) *Meagoe* v. *Simmons,* 1 *Moo. & Mal.* 121. (22 *E. C. L.* 266.) *Churchill* v. *Suter,* 4 *Mass. R.* 162. *Knights* v. *Putnam,* 3 *Pick.* 185. *Yankey* v. *Lockhart,* 4 *J. J. Marsh.* 276. *Hackley* v. *Sprague,* 10 *Wend.* 114. *Campbell* v. *Read, Mart. & Yerg.* 392. *Gaither* v. *Farmers & Mechanics Bank,* 1 *Pet.* 43. *Lloyd* v. *Keach,* 2 *Conn. R.* 175. *Tuttle* v. *Clark,* 4 *Conn. R.* 153. *Bank of Utica* v. *Smalley,* 2 *Cowen* 770. *New-York Firemen Insurance Company* v. *Ely, Id.* 678. *Bank of Utica* v. *Wager, Id.* 712. *State Bank of New-Jersey* v. *Ayers,* 2 *Halst.* 130. *Powell* v. *Waters,* 8 *Cowen* 669. *Van Schaack* v. *Stafford,* 12 *Pick.* 565. *United States Bank* v. *Owens,* 2 *Pet.* 537. *Thompson* v. *Thompson,* 8 *Mass. R.* 135.

4. That the court ought, as matter of law, to have instructed the jury, that if they should find the facts as testified by the witness, the transaction was usurious, and the plaintiffs were not entitled to recover. *Button* v. *Downham, Cro. Eliz.* 643. *Roberts* v. *Tremayne, Cro. Jac.* 507. *Doe* d. *Davidson* v. *Barnard,* 1 *Esp. R.* 11. *Pratt* v. *Willey, Id.* 40. *Marsh* v. *Martindale,* 3 *Bos. & Pul.* 154. 158. *Davis* v. *Hardacre,* 2 *Campb.* 375. *Lowes* v. *Mazzarredo,* 1 *Stark. Ca.* 385. *Meagoe* v. *Simmons,* 1 *Moo. & Mal.* 121. (22 *E. C. L.* 266.) See also many of the other cases cited in support of the last point.

5. That if the contract was not usurious, the court ought to have charged the jury, that the plaintiffs were entitled to recover no more than had been paid by *Belden,* as the consideration of the note, and the interest thereon. *Cram* v. *Hendricks,* 7 *Wend.* 569.

*T. C. Perkins* and *H. Perkins,* contra, contended, 1. That

the testimony of *Beckwith* tended to show that notice was received by the defendant, and in due time : it was therefore admissible. But as the jury were instructed that it was insufficient, the defendant has no ground of complaint.

2. That there was no question of *law* regarding the sufficiency of the notice given. It was a simple question of *fact* whether the notice was duly given.

3. That the testimony of *Hooker* showed distinctly, that *Belden* made use of *some* diligence to ascertain the defendant's place of residence ; and it was properly submitted to the jury to determine whether it amounted to *due* diligence. The question of due diligence, where the facts are not ascertained, as in this case, is a question for the jury to determine, under instructions from the court as to the legal principles applicable to this subject. *Bateman* v. *Joseph*, 12 *East* 433. *S. C.* at *Nisi Prius*, 2 *Campb.* 461. *Remer* v. *Downer*, 23 *Wend.* 620. 623. *Spencer* v. *The Bank of Salina*, 3 *Hill* 520. *Bank of Utica* v. *Bender*, 21 *Wend.* 643.

4. That if the question on which this part of the case turned, was a question of *law*, it has been correctly decided ; and a new trial will not be granted. *Chitt. Bills*, 213. *Bank of Utica* v. *Bender*, 21 *Wend.* 643. *Chapman* v. *Lipscome*, 1 *Johns. R.* 294. *Ransom* v. *Mack*, 2 *Hill*, 587. 592. *Baldwin* v. *Richardson*, 1 *B. & Cres.* 245. (8 *E. C. L.* 66.) *Bank of Utica* v. *Philips*, 3 *Wend.* 408. 410, 11. *Lowery* v. *Scott*, 24 *Wend.* 358. 360. *Barker* v. *Clark*, 20 *Maine R.* 156.

5. That the sale of a note, valid in its inception, at a discount of more than the legal interest, is not *per se* usurious. *Kent* v. *Walton*, 7 *Wend.* 256. *Nichols* v. *Fearing*, 7 *Pet.* 103. 109, 10. *Lloyd* v. *Keach*, 2 *Conn. R.* 175. *Tuttle* v. *Clark*, 4 *Conn. R.* 153.

6. That whatever the rule of damages might be in a suit against *C. & H. Chapin*, who sold the note to the plaintiff, yet as against this defendant, who, by his indorsement, became the surety of the makers, the plaintiff is entitled to recover the same amount as the makers themselves would be liable to. This, unquestionably, would be the face of the note and interest.

CHURCH, J. During the progress of the plaintiffs proof, and for the purpose of proving that due notice had been given

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Belden
*v.*
Lamb.

to the defendant of the dishonour of the note in question, he introduced the testimony of *A. S. Beckwith*, who testified, that the defendant, in a conversation which he heard, admitted that he had received notice of the non-payment, but at the same time, declared his refusal to pay the note, because the notice, which had been sent by mail, had been misdirected. The defendant claimed, that from this evidence there could be no legal inference that the notice had been received in due time, and that it should not be permitted to go to the jury at all, but that the court, as a matter of law, should declare that the notice was insufficient.

If this testimony conduced, in any reasonable degree, to prove, that notice was received by the defendant in proper time, it was rightfully before the jury, to be considered by them. Evidence, to be receivable, need not afford full proof of the fact for which it is offered; it is enough if it tends to prove—if it proves a single circumstance from which such fact may be fairly presumed. In the present case; to show that the notice was received in due time, it was proper to prove, that it had been sent, and also that it had been received in fact by the defendant, leaving only the time to be supplied, by direct proof or reasonable inference.

If the defendant only insisted upon the misdirection of the letter containing the notice, as his sole reason for refusing to pay the note, without an intimation that he had not received it in reasonable time, this might afford a ground of presumption, not strong, yet legitimate, that the notice had been duly received, although misdirected, and as soon as he would have received it, if it had been directed to him at a different post-office. We presume that his silence in this respect, was urged against him in argument; and can we say, that counsel had no right to urge it?

This motion does not proceed upon the ground that the verdict was against evidence, upon this point of notice; but that the court erred in permitting the jury to consider it. Whether there is any evidence upon any material point in a cause, is a question for the court; how much it may prove, if admissible, is for the jury. *O'Kelley* v. *O'Kelley,* 8 *Metc.* **437.** 1 *Greenl. Ev.* 59.

It seems that no additional proof was offered on this point; and therefore, the court, in the final charge, instructed the

jury, that this evidence of *Beckwith* was not sufficient to authorize them to find that notice had been received by the defendant in due time. If therefore, as the defendant claimed, the sufficiency of the notice proved by *Beckwith's* testimony, was a question of law, the court decided it, as such, in his favour.

The same principles, to some extent, may be applied to the testimony of *Hooker.* The question is one of relevancy only. Did the facts proved by him at all tend to show, that *Belden* had acted with ordinary diligence in making enquiry for the indorser's place of residence ? We suppose that it is well settled, that when certain facts conducing to prove diligence, are either proved or conceded, the question whether they amount to due or legal diligence, is one for the decision of the court alone ; but when the question is, as here, what are the facts, and what was done by the holder in making enquiries, the jury are to decide it. And this is the doctrine of all the cases referred to by the counsel on both sides.

*Hooker* testified, that *Belden,* after having spoken with him, as the cashier of the *Farmers and Mechanics Bank,* on the subject of the defendant's residence, went out of that bank, for the purpose of ascertaining it, and soon after returned, and directed the witness to write the word " *Chickopee*" upon the note ; which he did. If this testimony was to stand alone, and be considered without reference to any other facts which were proved in the case, we should probably say, that they did not amount to proof of legal diligence. But this was not all. Other facts were proved, which might have an important bearing upon this question. This note was payable at the *Hartford Bank.* The defendant, within a few months, had received notices, not only from that bank, but also from the *Connecticut River* and *Exchange* banks. The *Farmers and Mechanics Bank,* from whence *Belden* went out, with the declared purpose of obtaining information regarding the defendant's residence, was notoriously within a few rods from the aforesaid banks, where the defendant was known. Would it be unreasonable for a jury, under such circumstances, to infer, that *Belden,* the holder of this note, a man of business, who knew his duty and felt his interest, did make enquiries of the agents of some of these banks ? And if he did, the law would require no more of him. The

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

Belden
*v.*
Lamb.

weight of all this evidence it was the duty of the jury to consider. It presented a mixed question of law and fact. *Bateman* v. *Joseph,* 12 *East* 437. *Browning* v. *Kinnear,* 1 *Niel Gow* 81. (5 *E. C. L.* 471.) *Bank of Utica* v. *Bender,* 21 *Wend.* 643. *Remer* v. *Downer,* 23 *Wend.* 620. *Spencer* v. *Bank of Salina,* 3 *Hill* 520.

The superior court, having admitted the testimony of *Hooker,* submitted it to the jury, with instructions as to the law of the case ; thus treating the question as one involving both law and fact, to be determined by the jury, under the instruction of the court. A majority of us approve of the course taken in this respect. We certainly do not intend to sanction any relaxation of the rules of law requiring diligence on the part of the holders of negotiable paper. And at the same time, we are not disposed to require of them any extraordinary pains-taking to determine which among the almost countless number of village post-offices in this country, will best accomodate the drawers and indorsers of bills and notes ; especially, when all difficulties on this subject may be so easily removed, by putting the name of the post-office upon the bill or note, when it is drawn or indorsed.

Again, the defendant claimed that the discounting of the note in suit by *Belden,* was usurious ; and that upon the facts stated in the motion, it was the duty of the court so to have said. Usury is connected only with *loans,* and not with *sales.* In all cases where the transaction is in fact a loan, though made to assume the form of a sale or other disguise, and a rate *per cent.* beyond that of legal interest, is reserved or taken upon it intentionally, as a premium, the law pronounces it to be usurious.

The most frequent expedient of the usurer, is, to cover an actual loan under the pretence of a sale or discount of a bill or note ; and it has been found difficult sometimes to detect the real character of the transaction. It seems now to be well understood, that, if a promissory note be good at its inception, and effective in the hands of the payee against the maker, and is what is called a *business* note, such note may be sold by the holder, like any chattel or other chose in action, for such price or rate of discount as the parties may stipulate for, without any presumed imputation of usury. But if the note is only made to raise money upon, and to become effective

only by the indorsement of it, and thus is merely *accomoda-* *tion* paper, the discounting of such paper at a rate of deduction greater than the lawful interest, is treated as a loan by the indorsee, and will be considered at least as *prima facie* usurious.

The enquiry therefore was, notwithstanding the form of the transaction, whether it was a loan of money by *Belden* to *C. & H. Chapin,* or the *bona fide* purchase of a business note at a discount? And this was a question of fact properly submitted to the jury. *Munn* v. *Commission Co.,* 15 *Johns. R.* 44. *Nichols* v. *Fearing,* 7 *Peters* 103. *Crain* v. *Hendricks,* 7 *Wend.* 569. *Knight* v. *Putnam,* 3 *Pick.* 184. *Lloyd* v. *Keach,* 2 *Conn. R.* 175. *Tuttle* v. *Clark,* 4 *Conn. R.* 154. *Phelps* v. *Kent,* 2 *Day* 453. *Talcott* v. *Goodwin,* 3 *Day* 264. *Carstairs* v. *Steen,* 4 *M. & S.* 192.

Finally, the defendant insisted, that if liable at all, he was so only to the extent of the consideration paid by *Belden* upon the purchase of the note, with the interest. We may admit the doctrine claimed by the defendant, that as between the indorsee and his immediate indorser, the actual consideration of the transfer may be enquired into. But this principle, if true, is not applicable to the present case. Here the real transaction was between *C. & H. Chapin,* the payees of the note, and *Belden,* the purchaser. *Lamb,* the present defendant, was no party to the consideration of the contract of sale: he came in only as additional security for the ultimate payment of the note. The jury have found, that this note was originally a valid note; and that *Belden* was the *bona fide* purchaser of it. We see not, therefore, why he is not entitled to recover its full value, as well from the surety, as he would have been, if he had sued the makers.

Such being the views of a majority of the court upon the several objections taken by the defendant, we shall advise that he is not entitled to a new trial.

In this opinion WAITE and HINMAN, Js. fully concurred.

WILLIAMS, Ch. J. and STORRS, J. dissented on the point of due diligence to ascertain the defendant's place of residence, thinking the evidence, if fully credited, not sufficient to show, that such diligence had been used; and so the jury should

have been instructed.    On the other points in the case, they concurred with the majority.

New trial not to be granted.