Bartlett v. Isbell.

JAMES BARTLETT *vs.* SARAH M. ISBELL.

A promissory note, indorsed by the defendant, was sent by the plaintiff, when about to fall due, to a collecting agent in the place where it was payable. The agent presented it for payment, and on payment being refused delivered it to a notary for protest. Neither the collecting agent nor the notary had any knowledge of the defendant's residence. The plaintiff had knowledge of it, but had not communicated the information. The agent and the notary used due diligence to ascertain it, and were led to believe that it was in *M*, and sent a notice to the defendant there. The defendant in fact resided in *N*, and never received the notice. Held, that the notice was sufficient.

The "due diligence" in such a case is to be exercised by the holder for collection, and not by the owner of the paper.

It is otherwise where the person acting in the collection of the note is the mere servant of the owner.

Collecting agents are recognized in the law as "holders for collection," and for all the purposes of demand and notice, and the exercise of due diligence after dishonor, they are holders of the note; and the law imposes upon them the duty

Bartlett v. Isbell.

of doing all that the owner would be required to do for the protection of his rights, and makes them liable over to the owner for default in that duty.

The holder of indorsed paper has a right to rely on the contract of the indorser that the paper will be paid by the maker at maturity, and he is not bound to anticipate and make provision for a breach of the contract.

The duty to give notice, and therefore the duty of due diligence to discover the residence of the indorser, arising subsequently to the dishonor of the note, it is not an element of due diligence that the owner should previously have communicated his knowledge of the indorser's residence to the holder for collection.

If any precaution against mistake is to be exercised before dishonor it should be by the indorser himself, by appending to his indorsement the name of his residence, and if he neglects this he may rightfully be presumed to be willing to leave the matter of notice to the contingencies of due diligence.

ASSUMPSIT against the defendant as indorser of a promissory note. The case was tried in the superior ourt before *Park, J.,* on the general issue closed to the court, and the following facts were specially found.

The note in question was made by Isbell Brothers, a copartnership then located in Meriden in this state, and was payable to the order of the defendant, who indorsed it and delivered it to the plaintiff. The plaintiff kept it in his hands until near the time that it became due, and the firm of Isbell Brothers having in the mean time removed to the city of New York, he delivered it to Adams' Express Company, to take it to the city of New York for collection. The agent of the express company, to whom it was delivered by the plaintiff, took it to New York and delivered it to one William Dykes, residing there, to collect it when it should become due. Dykes duly presented it for payment, but it was not paid and he caused it to be protested. Neither the notary who protested the note, nor Dykes, nor the agent of the express company, knew the residence of the defendant. Dykes and the notary used due diligence to ascertain her residence, and sent a notice by mail to her, directed to the town of Meriden, that town being the place where due diligence informed them that she resided. She did not however reside in Meriden, but then resided, and had for a long time, in the town of New Haven, in this state, and she consequently never received the notice. The plaintiff, at the time when he delivered the note to the

agent of the express company, and at the time the note became due, knew the residence of the defendant, but did not communicate any information upon the subject to the agent, or to Dykes, or the notary.

Upon these facts the court reserved the case for the advice of this court.

*Doolittle* and *Hull*, for the plaintiff, cited *Bowling* v. *Harrison*, 6 Howard, 258 ; *Bank of U. States* v. *Davis*, 2 Hill, 458 ; *Ransom* v. *Mack*, id., 592 ; *Mead* v. *Engs*, 5 Cowen, 308 ; *Smedes* v. *Bank of Utica*, 20 Johns., 372 ; *Ogden* v. *Dobbin*, 2 Hall Superior Ct. R., 112 ; *Chase* v. *Burnham*, 13 Verm., 447 ; *Clode* v. *Bayley*, 12 Mees. & Wels., 51 ; Edwards on Bills, 494, 622 ; Story on Prom. Notes, § 316, note 1.

*Platt*, for the defendant, cited *Fitler* v. *Morris*, 6 Whart., 406 ; dissenting opinion of McLean, J., in *Harris* v. *Robinson*, 4 Howard, 349 ; *Chapman* v. *Lipscombe*, 1 Johns., 294 ; *Barr* v. *Marsh*, 9 Yerg., 253 ; 3 Kent Com., 107, and note ; Hol. comb's Lead. Cases, 311.

BUTLER, J. The note in question was not payable at bank or at any particular place ; the makers had removed to New York and it was necessary that it should be sent there for collection ; and it was so sent to a recognized collecting agency, the Adams Express Company. It was dishonored and given to a notary to protest. In the exercise of due diligence, he made inquiry for the residence of the indorser, was informed incorrectly that it was in Meriden, and sent the notice accordingly. That he might properly do so, if he inquired of those who would be likely to know her residence, who professed to know it, and so stated it, and that such inquiry constituted due diligence, is now elementary law. Notice thus given it is held is equivalent to actual notice. Edwards on Bills, 511, 648, and cases cited. The court below found due diligence on the part of the express company and the notary, and there

Bartlett *v.* Isbell.

fore, impliedly, that such inquiry was made, and it would seem to follow that the plaintiff was entitled to judgment.

But the defendant defends on the ground that the plaintiff knew the residence of the indorser when he sent the note to New York for collection, and should have communicated it to the express company, but did not, and therefore that due diligence was not exercised by *him,* and the indorser is discharged. The claim can not be sustained on principle or by authority.

It may be conceded that where the owner of a note has knowledge of the residence of an indorser, and gives the note directly, and without the intervention of a " holder for collection," to a mere agent, as to a clerk or servant to collect, or to a notary to protest, without informing them of the residence, and by reason of their ignorance there is default of notice, the indorser will be discharged; for due diligence requires in such case that the notary, although a sworn officer of the law, shall make inquiry of the owner, and the owner will be presumed to direct and control his *mere agent,* as well after dishonor as before. But the unrestrained and convenient use and circulation of negotiable paper requires that the owners be permitted to entrust it for collection to distant banks or other agents, who can not act under their immediate direction or information, and who must be clothed with power to do all acts necessary to collect the note, or charge the indorser in case of dishonor. Such agents are recognized in the law as " holders for collection ; " for all the purposes of demand and notice and the exercise of due diligence after dishonor they are " holders " of the note ; and the law imposes upon them the duty of doing all that the owner would be required to do for the protection of his rights, and makes them liable over to the owner for default in that duty. *Smedes* v. *Bank of Utica,* 20 Johns., 372. Edwards on Bills, 495. *Allen* v. *Suydam,* 20 Wend., 321.

The Adams Express Company were such holders in this case ; the duty of giving notice to the indorser themselves or by a notary, and directly or through the owner, devolved upon them and them alone ; and it could not be required of

the owner to give them, as a precautionary measure, information in respect to the residence of the indorser, for several reasons.

1. In the first place the import of the contract of the indorser was, that the makers on due presentment would pay the note. On that contract the plaintiff might rely until it was broken by the dishonor of the note ; and it does not lie in the mouth of the defendant, upon any principle known to the law, to say—" *you* should have taken the precaution to provide for the possibility of a breach of *my* contract." When the contract was broken the duty to give notice arose; till then the plaintiff might remain passive, as in other cases of guaranty, relying on the presumption that the contract would be fulfilled and the note be paid. When the note was dishonored, if it had been in the plaintiff's possession or under his immediate control, he would have been bound to exercise due diligence ; but it was in the possession and control of distant holders for collection, and the law devolved that duty on such holders, and upon them alone. That they performed it is found by the court.

2. " Due diligence " in respect to notice becomes necessary in *consequence* of the dishonor of the note, is to be exercised *subsequently* to that event, and can involve no *prior* precautionary act. In strictness therefore it can not be claimed, as an element of due diligence, that the owner, if he has knowledge of the residence of an indorser, shall send or give that knowledge, prior to dishonor, to a distant holder for collection ; although if the " holder for collection " has such knowledge, *he* must communicate it to the servants or notary whom he employs after dishonor.

3. A rule requiring the owner to send his knowledge of the residence of the indorser with the note to a holder for collection, would be one involving much painstaking on the part of the owner, which the indorser has no just right to insist upon. If *precaution* is to be exercised *before dishonor*, to avoid the possibility of mistake, the indorser should be required to append his residence to his indorsement. See the remarks of Judge Bronson in *Ransom* v. *Mack*, 2 Hill, 592, and of Judge

Church in *Belden* v. *Lamb*, 17 Conn., 452. Moreover, such a rule would embarrass the collection of negotiable paper, for unless a special communication from the owner to the holder for collection accompanied the note, the latter would not know whether the owner knew the residence or not, and consequently whether any diligence on his part would avail or not, and his only safe rule of action would be to send the notices, in all cases, to the owner to be forwarded.

4. Such a rule is unnecessary. If a holder for collection, or his servant, or a notary, can not learn the residence of the indorser by due diligence, he can and should send the notice to the owner to be forwarded. Such a course, without previous inquiry even, was approved in the case of *Hartford Bank* v. *Stedman*, 3 Conn., 489, and would in all probability have been taken in this case, if due diligence had not advised the notary that the indorser resided in Meriden. True that was a mistake. But against such mistakes, which may occur notwithstanding due diligence is exercised, the indorser can guard by precaution, and if he does not do so by appending his residence to his indorsement he may rightfully be presumed willing to leave the matter of notice of dishonor to the contingencies of due diligence. For these reasons we do not think the claim of the defendant sustainable on principle.

Nor is it supported by the authorities cited. In *Harris* v. *Robinson*, 4 Howard, 336, the holder for collection and the owner both resided in the same town. The former was not inquired of and the notary did not learn the post office address of the indorser. It was not a case of misinformation received in the exercise of due diligence, and the question was, whether in exercising due diligence the notary should have inquired of the owner, because he resided in the same town. The majority of the court, intimating that such inquiry would be necessary, ordinarily, where the owner resided in the same town and knew the residence of the indorser, and the notary knew who the owner was, and that he was accessible, yet held *on the evidence*, that the notary did not know the owner, and that the owner did not know the residence of the indorser, and therefore that due diligence appeared. Judge McLean

dissented, and intimated, on the authority of a dictum in a case in Louisiana, that the owner should have informed the holder for collection. The case is an authority for the rule that the notary should inquire of the owner, as well as holder for collection, where both reside in the same town; but goes no further, and is not in point here.

Another case relied upon is that of *Fitler* v. *Morris*, 6 Wharton, 406. In that case a draft was drawn by a house in Montgomery, on a house in Mobile, in favor of a house in Philadelphia. The Philadelphia house sent it to a notary in Mobile to *present for acceptance*. It was dishonored; the notary made no inquiry, and missent the notice for the drawers to Philadelphia, but not to the payees to be forwarded. The court properly held the notice insufficient. But the case is inapplicable. The instrument was a *draft*, sent for *acceptance*, not a *note* sent to a " *holder for collection.*" There was no obligation resting on the drawees to accept, and no presumption that they would accept; or, as in the case of the makers of this note, any presumption that the drawees would know the residence of the drawers; nor any diligence in fact. If it be true that the holder of an unaccepted draft should be required to send the name of the residence of the drawers to the notary, with the draft, when sent for acceptance merely, it does not follow that the owner of a note should be holden to the same precaution, when sent to a distant holder for collec- tion. The cases are distinguishable, and we know of no case in point for the defendant.

We advise judgment for the plaintiff.

In this opinion the other judges concurred; except SAN- FORD, J., who did not sit.