The State of Iowa v. Hinkle.

---

THE STATE OF IOWA *v.* HINKLE.

It is only where a grand juror has formed or expressed an *unqualified* opinion, that the defendant is guilty of the offence for which he is held to answer, that he is disqualified from serving, if objected to on that ground, under section 2884 of the Code.

Where a party held to answer for a criminal offence, at the time of empanneling the grand jury, asked a juror whether he had not formed or expressed an opinion as to his guilt, to which the juror answered that he had, and thereupon the juror was challenged as incompetent; and where the court then asked the juror, whether he had formed or expressed an *unqualified* opinion of the guilt of the defendant, to which the juror answered that he had not—that his opinion was based upon rumor, upon which the challenge was overruled; *Held,* That the juror was not disqualified.

Where a party has been held to answer for a criminal offence, he cannot, after indictment found, object to the manner in which the grand jury had been selected and drawn.

Where on the trial of an indictment, in which the defendant was charged with the murder of his wife, committed by means of strychnine, the State introduced two witnesses, one of whom testified to certain improper conduct between the prisoner and a female named F., prior to the death of the wife, and on the day of the burial—and the other testified, that after the death of the wife, and when the prisoner was in jail, he asked him if he did not get arsenic to kill the rats, to which the prisoner answered, that he did; that witness then asked him, "where?" to which the prisoner replied, "it is none of your business"—which evidence was objected to by the defendant, but admitted by the court; *Held,* That the evidence was properly admitted.

Where evidence *tends* to prove the issue, or forms a link in the chain of

proof, however slight or remote may be its bearing, it is admissible.

So, when material, evidence as to the knowledge and intent, or motive of a party, is always admissible.

The means of knowledge of an expert, are proper to be considered by a jury, and they should give or withhold credence in the opinion given, as they may believe the expert qualified to speak more or less intelligently and understandingly.

Where two physicians, S. and F., were called as experts, to testify as to the tests applied in the chemical analysis made of the stomach of the deceased, and of the tests usually applied for detecting the existence of poison in such cases, and one of them stated that he was not a professional chemist, but understood some of the practical details of chemistry; that portion, at least, which pertained to his profession; that he had no practical experience in the analysis of poisons, until, in connection with F., he analysed the contents of the stomach of the deceased; that since that time, he had conducted experiments on a small scale; and that he was previously acquainted with the means of detecting poisons, and had since had some experience in that way; and where the other testified that he was not a practical chemist; that he did not follow the science as a profession; that he understood the chemical tests by which the presence of strychnine can be detected; that he professed to understand the principles of chemistry as taught in the books on that science; that he never experimented with a view to detect strychnine by chemical tests; that he had seen experiments by professors of chemistry; and that there was one test much relied on, the trial of which he had witnessed; and where the witnesses were objected to as incompetent, for want of the requisite professional skill, which objection was overruled; *Held*, That the witnesses were competent.

*Appeal from the Appanoose District Court.*

TUESDAY, JUNE 22.

The prisoner was indicted at the October term, 1856, of the district court of Davis county, for the murder of his wife, Nancy Hinkle. Upon his affidavit and motion, a change of venue was ordered to Wapello county; and afterwards upon his like application, in the Wapello district court, the venue was changed to Appanoose county, in the ninth judicial district. At the April term, 1858, of that court, he was tried, found guilty of murder of the first degree, and sentenced accordingly. To reverse this conviction, he prosecutes this appeal. For the errors as-

signed and the material facts, see the opinion of the court.

*Cassady & Crocker*, for the appellant, cited *Goodwin* v. *Blatchley et al.*, 4 Ind., 438; *Dixon* v. *The State*, 3 Iowa, 417; Whart. Crim. Law, 299; 2 Russ. on Crimes, 772; 21 Pick., 515; 1 Greenl. Ev., 563; 3 Phil. on Ev., 173, note; Whart., 389.

*S. A. Rice*, Att'y. General, for the State, relied upon *Dixon* v. *The State*, 3 Iowa, 416; *Norris' House* v. *The State*, 3 G. Greene, 513; Code, sec. 2881.

WRIGHT, C. J.—In the examination of the case, we shall confine ourselves to the errors insisted upon by counsel in their argument, both because we take it for granted, that these are the material ones, and because those assigned, and not relied upon, are either involved in those examined, or are not sustained by anything found in the record.

And first, it is urged that the court erred in overruling the challenge of the defendant, to a member of the grand jury that found the indictment. It seems that the defendant had been held to answer for this offence, prior to the term at which the indictment was found, and at the time of empanneling the jury, he asked an individual juror, whether he had formed or expressed an opinion as to his guilt, to which the juror answered that he had. The court then asked the juror, " whether he had formed or expressed an unqualified opinion of the guilt of the defendant; to which the juror answered, that he had not—that his opinion was based upon rumor. The challenge was thereupon overruled.

The Code, (section 2884), provides that a challenge to an individual juror may be made, for the reason "that he has formed or expressed an unqualified opinion, that the defendant is guilty of the offence for which he is held to answer." We think the language of the section quoted, is very definite and clear, and settles this question in favor of the ruling by the court below. The juror first an-

swered, that he had formed an opinion that the defendant was guilty, but upon being further interrogated, he showed that this opinion was founded upon rumor, and that it was not unqualified. It is only where the juror has formed or expressed an unqualified opinion of the defendant's guilt, that he is disqualified from serving, if objection is made. The case of *Goodwin* v. *Blachly et al.*, 4 Ind., 438, cited by counsel, is unlike this in two important particulars. *First:* Because in that case, the juror was held to be disqualified, because he had formed an opinion on the merits of the case, on information derived from witnesses. Nothing of this kind is shown in the case before us. But the second, and conclusive reason is, that our statute has, in plain and unambiguous language, defined what opinion shall disqualify. The juror answered unequivocally, that he had not formed or expressed such an opinion; and that the opinion which he did entertain, was founded upon rumor. The statute has given the rule, and it is not for us to change it.

It is, in the second place, urged that the court erred in sustaining the objection made by the State, to what is styled the defendant's plea in abatement. It seems that after the indictment was found, the defendant filed his plea, setting up various objections to the manner in which the grand jury had been selected and drawn. To this plea the State demurred, and also filed a motion to strike it from the files. The defects, or errors complained of in the plea, are substantially the same as those considered in the case of *Dixon* v. *The State*, 3 Iowa, 416, and the position of the parties is substantially the same. In that case, the defendant had been held to answer, and had given bail; in this, the defendant had been committed for want of bail. It was there held, that objections of the character here presented, come too late, when presented after indictment found, if the defendant has been held to answer; and to the same effect is, *Norris House* v. *The State*, 3 G. Greene, 513. A further objection to the plea in this case is, that it refers to, and relies upon, matters not of record,

and is not sworn to. This would render it defective upon demurrer. In this ruling of the court, therefore, we cannot say there was error.

The indictment charges that the murder was perpetrated by administering poison, to-wit: strychnine, to the deceased. On the trial, the state called a witness, who testified to certain improper conduct between the prisoner and one Melinda Fiske, prior to the death of his wife, and on the day of her burial. Another witness testified, that after the death of the wife, and when the prisoner was in jail, he asked him if he did not get arsenic to kill the rats, to which the prisoner replied that he did. Witness then asked him, where? To this, the prisoner replied, "it is none of your business." The testimony of both these witnesses was objected to, and the objection overruled; and this is the third error relied upon in the argument.

The position of the defendant is, that the testimony did not tend to prove the matter in issue, and was calculated to mislead and prejudice the mind of the jury. In this view, however, we cannot concur. The argument assumes that it is not necessary that evidence, when offered, shall bear directly upon the issue; but that it is admissible, if it tends to prove it, or forms a link in the chain of proof. And this, we understand to be the established rule. 1 Greenleaf Ev., sec. 51, a; 11 Shepley, 139; 2 Watts & Serg., 441; 2 McLean, 596; 17 Conn., 441; 4 Sm. & Mar., 312. Under this rule, collateral facts, or those which are incapable of affording any reasonable presumption or inference, as to the principal fact, or matter in dispute, are excluded. But we are not to exclude facts, because they may have happened before or after the principal transaction, and which may have no direct connection with it. It is frequently material to show the knowledge, intent or motive of a party—and evidence as to this knowledge or intent, is always admissible. So, in the case before us, it can be readily seen, that if the prosecution could establish the fact, that an improper intimacy existed between the prisoner and the girl Fiske, the jury could see a mo-

The State of Iowa v. Hinkle.

tive for the commission of the offence charged.   The testimony would tend to show, that the affections of the husband were alienated from the wife, and that he would, therefore, be more likely to desire her death.

We cannot see how the prisoner could possibly be prejudiced, by the testimony in relation to the purchase of the arsenic, or how, in any view, it could be improper.   The prisoner might claim from the proof, that it was purchased for a proper purpose, and therefore tended to his exculpation, rather than to establish his guilt.   If the jury took this view, it is manifest that he was not prejudiced.   On the other hand, the State might reasonably claim, from the fact that the prisoner was purchasing other poisons, and refusing to state where he had obtained the same, that this conduct was inconsistent with his innocence.   The proof, in cases of this character, is frequently made up of a chain of circumstances, and so it was in the present instance.   This circumstance may have had but a slight, and even very remote bearing upon the question of the prisoner's guilt.   Of its weight, however, it was for the jury to judge, and not for the court, if it tended, as we think it did, to lead the jurors' minds to a conclusion upon the issue joined.   And we may add, that whatever hesitation we might otherwise have upon this question, is entirely removed, when, by reference to the instructions, we find that the mind of the jury was very carefully guarded against any possible improper influence from such testimony.   In admitting this testimony, therefore, the court did not err.

Two physicians were called, and testified as to the tests applied in the chemical analysis made of the stomach of the deceased—and also of the tests usually applied for detecting the existence of poison in such cases.   Both of them testified that they were practising physicians.   One of them stated, that he was not a professional chemist, but understood some of the practical details of chemistry—that portion, at least, which pertained to his profession; that he had no practical experience in the analysis of poisons, until, in connec-

tion with Doct. Francis, he analysed the contents of the stomach of the deceased; that since that time he had conducted experiments upon a small scale; and that he was previously acquainted with the means of detecting poisons, and had since had some experience in that way. The other testified that he was not a practical chemist; that he did not follow the science as a profession; that he understood the chemical tests by which the presence of strychnine can be detected; that he professed to understand the principles of chemistry as laid down in the books on that science; that he never experimented, with a view to detect strychnine by chemical tests; that he had seen experiments by professors of chemistry; and that there was one test much relied on, the trial of which he had witnessed. Defendant objected to these witnesses as incompetent, and now urge that they did not show themselves possessed of the requisite professional skill.

We think they were competent witnesses. It is, of course, desirable that great caution should be exercised in conducting experiments of this character, and that the most skillful professional aid should be secured. If conducted, however, by such as have not had experience, or by those who, though not practical chemists, give their opinions from knowledge derived from the books upon that science, such opinions would be entitled to less weight than if given by a practical chemist—he who bases his conclusions upon experience as well as books. The means of knowledge are proper to be considered by the jury, and they should give or withhold credence in the opinion given, as they may believe the expert qualified to speak more or less intelligently and understandingly. But to say that none shall be permitted to give their opinions, except those of the highest professional skill, or those who had given their lives to chemical experiments, would, in this country at least, render it impossible, in most cases, to find the requisite skill and ability. This seems to have been the view taken of the question by the court below. The jury was very fully and particularly instructed as to the weight to

be given to this character of testimony, and the consider-
ations which should enter into their deliberations in weigh-
ing the same.  We cannot conceive how the jury could,
under the circumstances, have been misled, or the defend-
ant prejudiced.

The remaining errors relied on, relate to certain instruc-
tions asked by defendant, and refused.  They involve,
however, the same question as that last considered, and do
not seem to require further notice.  We are thus, with
·more pain than difficulty, brought to the conclusion that
this case must be affirmed.