MICHAEL NOLAN, Plaintiff in Error, v. FREDERICK SHICKLE et al., Defendants in Error.

### February 6, 1877.

1. An action for damages alleged to have been caused by the negligence of a master in failing to supply suitable material and properly construct a scaffold cannot be maintained unless the plaintiff prove that there were defects either in the material or in the construction, that defendant knew of such defects, and that plaintiff was not aware of them prior to exposing himself to the danger.

2. If the person injured was fully aware of the hazard before the accident, or was guilty of negligence himself, he cannot recover.

3. In the absence of proof, negligence will not be presumed in an action for injuries alleged to have been caused by the negligence of another.

4. Where the facts, being admitted, are not sufficient, together with the inferences which a jury might legally draw, to support a verdict, on a demurrer to the evidence judgment will be given for defendant, unless plaintiff takes a nonsuit.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Marshall & Barclay*, for plaintiff in error, cited: Wells on Law and Fact, sec. 265; Norton *v.* Ittner, 56 Mo. 351; Kane *v.* Learned, 17 Mass. 190; Thomas *v.* Telegraph Co., 100 Mass. 156; Smith *v.* City, 45 Mo. 449; Conroy *v.* Vulcan, 62 Mo. 35; Porter *v.* Railroad Co., 60 Mo. 160; Gormley *v.* Vulcan, 61 Mo. 492; Smith *v.* Railroad Co., 61 Mo. 588; Lewis *v.* Railroad Co., 59 Mo. 495; Keegan *v.* Kavanaugh, 62 Mo. 230.

*T. A. & H. M. Post*, for defendants in error, cited: Greenleaf *v.* Illinois Central R. R. Co., 29 Iowa, 46; Hayden *v.* Smithville Mfg. Co., 29 Conn. 560; Cummings *v.* Collins, 61 Mo. 523; Wright *v.* New York Central R. R. Co., 25 N. Y. 566; Mad. River & Eastern R. R. Co. *v.* Barber, 5 Ohio St. 565; McGowan *v.* St. Louis & Iron Mountain R. R. Co., 61 Mo. 531; Devitt *v.* Pacific R. R. Co., 50 Mo. 305; Whart. on Neg., sec. 214, and cases cited; Owen *v.* New York Central R. R. Co., 1 Lans. 109; Shear. & Redf. on Neg., 3d ed., 111, sec. 95; Gibson *v.* Pacific R. R. Co., 46 Mo. 169; Snow *v.* Housatonic R. R. Co., 8 Allen, 441; Roberts *v.* Smith, 2 H. & N. 213; Shear. & Redf. on Neg., 3d ed., 13, sec. 11; Whart. on Neg., sec. 427; Pittsburg, etc., Co. *v.* McClurg, 56 Pa. St. 294; Keller *v.* New York Central R. R. Co., 24 How. Pr. 172; Wyatt *v.* Citizens' R. R. Co., 55 Mo. 489; Barton *v.* St. Louis & Iron Mountain R. R. Co., 52 Mo. 258; Gavett *v.* Manchester & Lawrence R. R. Co., 16 Gray, 507, 508; Todd *v.* Old Colony & Fall River R. R. Co., 7 Allen, 207; Brown *v.* European & North American Ry. Co., 58 Me. 389, and cases cited; Brooks *v.* Somerville, 106 Mass. 275; Denny *v.* Williams, 5 Allen, 1.

HAYDEN, J., delivered the opinion of the court.

This was an action to recover damages for an injury to the plaintiff, caused, as he alleged, by the negligence of the defendants. The petition charged that the defendants had been guilty of negligence in the construction of a scaffold, which was alleged to be defective, unsafe, and composed of insufficient materials, on which scaffold plaintiff had been ordered to work; that in obedience to the order, and believing the scaffold to be fit and proper, the plaintiff worked upon it, but that, by reason of its unsoundness and the defendants' negligence, the scaffold gave way and broke, whereby plaintiff was precipitated and fell to the ground, etc. The answer admitted the fall, but denied the other allegations, and charged that the accident was owing to the gross carelessness of the plaintiff. The reply denied any carelessness on the part of the plaintiff.

The evidence showed that the plaintiff was at work on or about an iron fence around a circular gallery of the furnace of the defendants. The platform or scaffolding on which he was at work consisted of a plank from fourteen to sixteen feet long, fourteen inches wide, and two inches thick, one end of which rested on the floor of an extension of the gallery of the furnace, while the other end was supported by scantlings projecting out from beneath the gallery, and fastened to it by ropes. This plank had an inclination, caused by the fact that the outer scantling — that is, the one farthest from the extension — was six or eight inches lower than the level of the gallery on which the inner end of the plank rested. The plaintiff testified that on stepping on the plank he found that it did not rest fixedly on the inner scantling, but moved up and down somewhat on that scantling. The platform of the extension of the gallery was iron, and this plank lapped over and rested upon this platform at one end, and extended out over and beyond the outer scantling along the gallery. The purpose of this temporary scaffold was to enable the plaintiff the more readily or

conveniently to put the angle-iron on the sheet-iron fence around the line of the gallery. The height of the plank, as it rested on the extension and the scantlings, was about sixty-five or seventy-five feet from the ground. The plaintiff testified that he had been out on the plank, off and on, many times on the day on which he fell, and on the day previous other workmen had also been out on the plank. The only peculiarities any one appeared to have noticed about the plank, except its inclination and the fact that it moved somewhat up and down on the inner scantling, were that, in stepping on the projection, plaintiff noticed that the under side of the plank, for about five or six inches from the end that rested on the gallery, was beveled, or tapered off. This lapped over the edge of the extension about ten inches, and it was by this end that plaintiff always went onto the plank. In going onto it he had never gone, or had occasion to go, further out on the plank than eight feet from this inner end ; its whole length being, as stated, from fourteen to sixteen feet.

The plaintiff says : " The sheet-iron fence was not yet up on the projection *b*, where the west end of the scaffold lays. When I had worked to the corner of the projection and the east side of the furnace, McQuillen (defendants' agent) told me to be careful not to leave a hole at that corner, where one could fall through. I got my hammer and chisel to fix the angle-iron, and came around and went onto the scaffold. I got on the scaffold and gave one or two steps, and it went down with me. I don't know why it gave way. I only know it gave way." The plaintiff fell to the ground and was very seriously injured. The scantlings which supported the plank did not give way ; nor did the plank break. The evidence fails to show why the plank fell, or what was the cause of its falling. The plaintiff's expressions are : "It was raft plank, and went down under me when I fell." "I cannot say whether, when the plank went down under me, it broke off at the sharpened edge on the western projection, or whether it slipped off that edge, or what made it

go down with me." "I always supposed before I fell that it (the plank) was nailed to the most easterly support." "I thought the scaffold was safe, and was nailed to the most easterly support, and had no idea to the contrary before the accident." "I thought the scaffold was safe. I thought so because I thought it was nailed to the eastern support. I did not see any nails there, for I did not look to examine for nails. I saw no marks of nails. Nobody told me it was nailed. If it had been nailed, it would not have got away with me."

The plaintiff had nothing to do with placing the scaffold, and did not see it when it was putting up. He found it as it was, when ordered to go to work with the angle-iron by the agent or vice-principal of defendants. He did not, nor did his fellow-workmen, change the plank or do anything to it at any time. There is no testimony tending to show that any one thought it necessary or proper to make any alteration at any time. Plaintiff testifies that he could not do the work he was ordered to do without going out on the scaffold, though he afterwards seems to say he might have done it, only not so conveniently. He was not a scaffold-builder, but was a man familiar with scaffolds, and accustomed to work upon them at great elevations. It appeared that there is no rule for the building of scaffolding; that it is built to conform to particular work and the locality. Upon this evidence the court ruled that the plaintiff was not entitled to recover, and plaintiff took a nonsuit.

The burden is on the plaintiff in this case to prove negligence on the part of defendants, and that their negligence was the cause of the injury. As it is not contended that there was any defect in the material of this temporary apparatus — there is, at least, no evidence to show such defect — the fault must have been in the arrangement or construction of the appliances. The theory of plaintiff seems to be that the plank slid or worked off from its supports, and that the injury was thus caused. Accordingly,

it is said if the plank had been nailed to the scantlings it would not have worked off. There is a plain distinction between the suggestion of a possible precaution by which an injury might probably have been avoided, and the adducing of evidence which shows that the injury was caused by negligence of the defendants. Probably scarcely a mishap occurs where the wisdom which comes after the event cannot suggest some expedient by which, through the exercise of a more abundant caution, the accident might not have been prevented. It is for the plaintiff to show that the effective cause of the injury was the negligence of defendants, and to exclude the case from that class of occurrences which are often designated accidents, the word being used in this connection to characterize events the real cause of which cannot be traced, or, at least, are not apparent. As the Supreme Court said in *Shultz v. Pacific Railroad Company*, 36 Mo. 32, in the absence of affirmative and positive proof of negligence, the simple fact of an accident and injury would rather be attributable presumptively to misadventure, inevitable fate, or other causes for which the defendant would not be liable. There is no direct evidence in this case showing what was the cause of the fall of the plank, or even in what manner it fell. There is no evidence tending to show that the scantlings broke, and it would seem that neither of them broke or gave way. There is no evidence tending to show that the plank broke. That it slid off by reason of its incline is a supposition, unsupported by any testimony tending to show the direction or manner of *its* fall. The supposition of plaintiff that the plank would not have fallen if it had been nailed has been spoken of above. None of his other expressions, in describing the occurrence, imply that the plank fell by reason of its being improperly placed or connected. Some, quoted above, lead to the inference of an accident. But in fact he is purely ignorant on the subject, and there is no testimony to supply the deficiency.

He had repeatedly been out on the plank in safety, and so had his fellow-workmen. None of them saw occasion to adjust or alter the apparatus. Abstract the great elevation of the apparatus from the ground, and the actual result, and there is little from which any mind could infer negligence. And the great elevation, while it rendered the consequences more serious in case of a fall, had no tendency to bring a fall of the plank about.

These suggestions serve to show the difficulties in the way of maintaining the present case. If the evidence proves the effective causes of the falling of the plank, how does it prove them? Not by any direct evidence of negligence, but by raising an inference from facts which are as patent to the plaintiff as they now are to us. It is a peculiarity of this case that the plaintiff himself observed, before the accident, almost every fact from which his counsel now draws the conclusion that the apparatus was unsafe and insufficient, and from which he deduces the negligence of the defendants. Suppose, for instance, that the same scaffold had been at a point ten feet from the ground, and the work had been doing there, would there have been negligence? Yet the height was a matter perfectly obvious to the plaintiff. He was a skilled workman, accustomed to working upon scaffolding placed at great elevations. No material fact has been discovered that he did not know. He says, indeed, he thought the plank was nailed to the outer stanchion. This was probably an after-thought, produced by the result. The plain inference from the facts is either that he did not think it necessary that the plank should be nailed, or that he never thought, at the time, about the matter at all. On the supposition, however, that this conclusion was formed before the fall, it amounts to this, that he thought the apparatus safe. But all the grounds on which his conclusion rested were as open to him as to any one; possibly more open to him than to the defendants or their agent, since the testimony shows that,

in the course of his labor, peculiar circumstances and the actual working of the plank gave him opportunities, which he exercised, of minute observation. He was not called to go suddenly, or for the first time, on the plank; he had ample means, not only for seeing, but for testing, the apparatus. The scaffolding was made for a particular occasion, and was of a temporary character. There is no rule for building scaffolds, and they must be adapted to each locality and purpose. There is no question here of skill or art in a department of which the plaintiff was ignorant.

It is said, in some cases, that the master is responsible for the safety of the apparatus or appliances, and that there is an implied undertaking on his part to this effect in the contract of hiring. It is difficult to see how this can be, when the basis of the action is negligence. It is obvious that injuries may occur consistently with the exercise, not only of reasonable care and skill on the part of the master, but of the highest degree of diligence. It is held, even where the element of skill and art comes in as against a workman without special skill, that the employer is not bound to exhaustive care or the highest degree of diligence. *Wonder* v. *Baltimore & Ohio R. R. Co.*, 32 Md. 411; *Greenleaf* v. *Illinois Central R. R. Co.*, 29 Iowa, 14; Whart. on Neg., secs. 212, 213. Even carriers of passengers do not insure their safety; and the loose expressions in some of the cases must be taken in subordination to the facts before the court. The rule is that the master is bound to use reasonable care in supplying suitable apparatus for the performance of the work required; and is liable for any injury caused by negligence in fulfilling this obligation. *Gibson* v. *Pacific R. R. Co.*, 46 Mo. 163; *Keegan* v. *Kavanaugh*, 62 Mo. 230. The appellant has cited a large number of cases which it is unnecessary to comment upon, because the particular statement of facts above given serves to distinguish the present case from them. The appellant, however, makes an especial point of this, that the court below erred in taking

the case from the jury. On the facts of this case, under the rule that when all the facts are undisputed and do not admit of different constructions or inferences the question is for the court, we think this case was properly taken from the jury. The difficulty ordinarily attending the application of this rule is that different minds draw different inferences. The facts may be all admitted; but who is to say, if the jury are at liberty to draw inferences, that they may not infer negligence from the facts proved? The answer to this question is that the jury cannot draw inferences from admitted facts which the law does not allow them to draw. For instance, in the case of *Holman* v. *Chicago, Rock Island & Pacific Railroad Company*, 62 Mo. 562, from established facts the jury drew an inference as to the cause of the injury, and found the defendant was negligent. The Supreme Court held that the inference was not legally warranted by the evidence, and the verdict was set aside. In the cases of which this is an example there is, in one sense of the word, evidence tending to make out a case; but there is no evidence sufficient in law to support a verdict, and accordingly, on a demurrer to the evidence, judgment will be given for the defendant, unless the plaintiff chooses to take a nonsuit. The facts being admitted and the jury being at liberty to draw inferences from the facts, if the facts, and the inferences which the jury can legally draw, make out a case which in law could support a verdict, the court cannot take the case from the jury. The effect of a demurrer to the evidence is to make the court apply the law to the facts. In making this application the court has to decide what inferences are legitimate, and whether the facts and legitimate inferences support the issue. If they do not support the issue, or, in other words, make out a case that would sustain a verdict, the court is obliged to so declare as a matter of law. It would serve no purpose to let the case go to the jury, and for the court then to set aside the verdict as unsupported by the evidence. The law does not require a use-

less thing to be done, nor does it indulge, itself, in proceedings which consume time and accomplish nothing. Accordingly, if there is a mere scintilla of evidence tending to show that the plaintiff has a case, but if, admitting all the testimony to be true, upon the evidence and all the inferences that can lawfully be drawn from it, there is not a case made out that will in law support a verdict, the plaintiff shall be nonsuited.

This effect does not depend upon anything peculiar to actions involving questions as to negligence, but results from the nature of a demurrer to circumstantial evidence. The court does not, as counsel phrase it, sit as a "preliminary jury;" it sits as a court, though it does what juries do, namely, it applies the law to the facts. At common law, in case of a demurrer to circumstantial evidence, the party demurring was obliged to admit, not only every fact, but every conclusion which the evidence conduced to prove, else he could not insist on the jury being discharged, or oblige the party offering the evidence to join in demurrer. *Gibson* v. *Hunter*, 2 H. Black. 187, 209, and note *a; Cocksedge* v. *Fanshaw*, Doug. 119; Tidd's Pr. *866. In *Gibson* v. *Hunter*, Lord Chief Justice Eyre, delivering the unanimous answer of all the judges in the House of Lords, said: "But, if the party wishes to withdraw from the jury the application of the law to the fact, and all consideration of what the law is upon the fact, he then demurs on law upon the evidence, and the precise operation of that demurrer is to take from the jury and refer to the judge the application of the law to the fact." And, in case of a demurrer to the evidence, "the court will," says Tidd, *supra*, "if they can, give judgment upon such evidence, but otherwise a *venire de novo* must be awarded." But only such inferences as a jury can legally and reasonably make from the facts in evidence are to be taken as admitted by the demurrer. "The party demurring," says Chief Justice Marshall, in *Pawling* v. *The United States*, 4

Cranch, 221, "admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony. Forced and violent inferences he does not admit; but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw." In that case the evidence was by the court below, on demurrer, adjudged insufficient as a defense; the Supreme Court reversed the judgment, Chief Justice Marshall saying that the court could not say that a verdict would not have been received, or ought not to have been received, which should have found the issue in favor of the defendants below, or a verdict so finding would have been *against evidence*. To the effect that on a demurrer to the evidence only such inferences from the facts as are reasonable and legal can be taken as admitted by the demurrer are *Morrison* v. *Berkey*, 7 Serg. & R. 244; *Jones* v. *Vanzandt*, 2 McLean, 596; *Young* v. *Black*, 7 Cranch, 565; *Doe* v. *Rue*, 4 Blackf. 263; *Donaldson* v. *Waters*, 30 Ala. 175; *Stephens* v. *White*, 2 Wash. (Va.) 210; *Hansbrough* v. *Thom*, 3 Leigh, 147.

In *Parks* v. *Ross*, 11 How. 362, on the trial in the court below, the defendant asked and the court gave the instruction that, if the evidence was believed by the jury to be true, the plaintiff was not entitled to recover, Mr. Justice Grier, delivering the opinion of the court, said: "It is undoubtedly the peculiar province of the jury to find all matters of fact, and of the court to decide all questions of law arising thereon. But a jury has no right to assume the truth of any material fact without some evidence legally sufficient to establish it. It is, therefore, error in the court to instruct the jury that they may find a material fact of which there is no evidence from which it may be legally inferred. Hence the practice of granting an instruction like the present, which makes it imperative upon the jury to find the verdict for the defendant, and which has, in many States, superseded the ancient practice of a demurrer to evidence. It

answers the same purpose and should be tested by the same rules. A demurrer to evidence admits, not only the facts stated therein, but also every conclusion which a jury might fairly or reasonably infer therefrom." The learned judge then says the question before the court is whether the evidence submitted by the plaintiff was sufficient to authorize the jury in finding the issue, and goes on to consider the question. *Schuckardt* v. *Allens*, 1 Wall. 369, 371. So in *Reed* v. *Deerfield*, 8 Allen, 524, it is said: "Where the whole evidence introduced by the plaintiff, if believed by the jury, is so insufficient to support a verdict that the court would not permit one to stand, it is the duty of the court to instruct the jury, as matter of law, that there is not sufficient evidence to warrant a verdict for the plaintiff." *Todd* v. *Old Colony, etc., R. R. Co.*, 7 Allen, 207; *Brown* v. *European, etc., R. R. Co.*, 58 Me. 389; *Brooks* v. *Somerville*, 106 Mass. 275; *Denny* v. *Williams*, 5 Allen, 4; *Bailey* v. *Kimball*, 26 N. H. 351; *Mason* v. *Lewis*, 1 Greene (Iowa), 494; *Ellis* v. *Ohio, etc., Trust Co.*, 4 Ohio St. 628; *Thrings* v. *Central, etc., R. R. Co.*, 7 Robt. 616; *Gray* v. *McNeal*, 12 Ga. 424; *Stuart* v. *Simpson*, 1 Wend. 376.

The action of the court in these cases involves no question as to the weight of evidence, such as is brought up on a motion for a new trial; it settles no question of disputed fact, and passes upon the credibility of no witness. It decides that, in contemplation of law, there is not any evidence to support a verdict; for evidence which is legally insufficient to make out a case is, *quoad hoc*, no evidence. The section of the statute in regard to the granting of new trials (Wag. Stat. 1058, sec. 4), cited by the plaintiff in error, has no bearing on this question. That section refers to the action of the court after verdict, and has no application to demurrers to evidence. Nor does the purpose or principle apply; for on a demurrer to evidence the court is obliged to give the fullest effect that a jury by any possibility

could legally give to all the evidence in the case. When it has given this effect and arrived at the results of the evidence, the question whether the evidence will sustain a verdict is purely a question of law — a question as to the legal effect of ascertained facts.

The judgment of the court below is sustained. All the judges concur.